IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-JERSEY,

### AT NOVEMBER TERM, 1839.

---

MARY WOODRUFF WIDOW OF SILAS WOODRUFF v. BENJAMIN BROWN.

---

In Dower for Lands in Essex.   On Demurrer.

*Tout temps prist* may be pled in this action, under the Statute of New Jersey, relative to dower, by the heir, but not by his alienee or feoffee.   *Per* Ch. J. White, J. and Dayton, J.   Ford, J. and Nevius, J. *contra*.

That the demandant received compensation for the annual value of her dower, during the heir's possession of the freehold, is not pleadable, but should be given in evidence in mitigation of damages, upon the writ of inquiry.

---

This case was submitted without argument, upon the following state of the case, and briefs by

*A. Whitehead,* for Demandant, and

*S. Scudder,* for Defendant.

### STATE OF THE CASE.

The declaration is in the usual form. The defendant has pleaded two pleas.

Woodruff v. Brown.

First, That after the death of the husband, and while the freehold was the freehold of the heirs at law, persons were appointed by the heirs at law and the plaintiff, who set off to her, her dower, of which she took possession, &c.; upon this plea, the plaintiff has taken issue.

The Second plea is in these words, "And for further plea in this behalf, by leave of the Court here, for this purpose first had and obtained, according to the form of the Statute in such case made and provided, the said Benjamin says, that from the death of the said Silas, to the time when he the said Benjamin became tenant of the said freehold, the heirs of the said Silas, in whom the said freehold then was, always were ready to render to the said plaintiff, her dower of the said freehold; and that he the said Benjamin, from the time he became tenant of the said freehold, always was and still is ready to render to the said Mary, her dower of the said freehold; and this he the said Benjamin is ready to verify; wherefore he prays judgment if the said Mary ought to have any damages against him, by reason of the detention of her dower of the freehold aforesaid." To this plea, the plaintiff demurred generally.

For the demandant it is insisted,

*First,* That the plea *tout temps prist* is not a good plea in this state, in a case where the husband died seized.

*Second,* That the plea is bad, because the feoffee of the heir, cannot plead *tout temps prist.*

*And first,* By the act relative to dower, *R. L.* 397, *Sec.* 3, it is enacted, "That the widow shall recover damages from the time of her husband's death, if he died seized; or from the time of demanding dower, if the husband did not die seized.

This statute introduces a new rule. Before it, no damages were recoverable when the husband did not die seized. Though there may have been a demand, the dying seized must be found by the jury. Now if the husband died seized, the widow is entitled to damages from his death, without demand, and in other cases, from the time of demand. *Coxe's N. J. Rep.* 125, 452; 4 *Griffith's L. R.* 1208, 9 & *N.* 1.

It seems to have been the manifest intention of the Legislature

to put the two cases on different footings; if the husband die seized, that damages shall be recoverable from his death, without a demand, but in case he shall not die seized, that demand shall be made before the tenant is subject to damages.

By the English *Statute of Merton*, it is provided that damages shall be recovered from the death of the husband, if he die seized, to the day of the judgment. *Park on dower*, 11 *Law Library*, 138.

The statute of Merton differs from ours in this, that it only provides for the case where the husband dies seized.

Under this statute, the English courts hold that the tenant may plead *tout temps prist*, at the return of the summons, and pray that the demandant may not have any damages. 2 *Bacon's Abridgment*, 392; *Park on dower*, 136; *Coke Lit.* 32 *b.* 33 *a.*

But this plea must be. pleaded on the first day upon return of the summons. *Ibid.*

If *tout temps prist* is pleaded, the only replication the demandant can make is that she demanded dower.

*Park on dower*, 11 *Law Library*, 139; *Saunders' R.* 44, *d.* there the issue as to the damages would be simply whether the dower had been demanded, and the law the same, whether the husband died seized or not. Such a construction does not satisfy our statute. The Legislature has given one rule for the case where the husband dies seized, and another and different rule where he does not die seized : they cannot be construed to mean the same thing. If the heir wishes to relieve himself from the payment of damages, he ought to apply to have the widow's dower set off, under the statute *R. L. p.* 677; or he may himself assign the widow, her dower at any time.

Second, The plea is bad, for the feoffee of the heir cannot plead *tout temps prist.*

" The feoffee of the heir cannot plead *tout temps prist*, because he had not the land all the time since the death of the ancestor; and therefore she shall recover the mesne profits and the damages against him, and if he hath not provided his indemnity and recompense against the heirs, it is his own folly. 2 *Bacon's Abdt.* 392.

" The feoffee of the heir cannot plead *tout temps prist*, because he had not the land during all the time since the death of the

Woodruff v. Brown.

ancestor, 1 *Coke, Lit. title dower*, 33 *a* ; *Park on dower*, 11 *Law Library*, 140 lays down the same principle, and cites 2 *Bacon*, 392 ; *Coke, Lit*. 33 *a*. 1 *Keb*. 83.    No such plea is to be found in the book, nor authority to support it.

"If the heir sell to J. S. and the widow recover her dower against him, he must pay the whole mesne profits from the death of the husband, though he hath not himself been half the time in possession.    She is entitled by the statute, and can only recover against the tenant."    2 *Bacon*, 394

Defendant's argument.

Suppose the Heir does not set out dower to the Widow, but pays so much a year, for ten years, and then conveys the land in fee, shall the Widow bring dower against the feoffee, and recover damages for the whole time ?

*Co. Lit.* 32 *b*. 2 *Bac.* 392.  Widow cannot enter into her dower by the Common Law, but is driven to her writ.    Therefore our statute, *Rev. L.* 397, allows her to remain in possession without rent, and gives her damages from the death of her husband, if he died seized ; but suppose the heir should agree with the widow for the annual value of her dower, without setting it out, and pay her in advance for ten years, and then convey in fee. After the ten years expired, could the widow bring her writ, and tell the feoffee, that he could not plead *tout temps prist*, because he had not the land all the time since the death of the husband ?

2 *Bac.* 392, 394.  Under the plea of *tout temps prist*, the tenant of the freehold may shew that the widow had taken an annual compensation for the use of her estate, in preference to having her dower set out ; and that he had always been ready to assign, but the widow preferred the annual compensation.

In *Co. Lit.* 33 *a*.  The case of *Belfield* v. *Rowse*, the reason why the six years were not allowed wherein the defendant and her son took the profits, was because the tenant pleaded a false plea.

In second *Bacon, Wilson's ed.* 392, 3, the same case is stated, and the reason given is that though the demandant herself took the profits for six years, that was the consequence of the tenant's pleading non tenure, which being found against him, the other matter was superfluous except as to damages, for which he re-

Woodruff v. Brown.

mained a deforcer. Suppose in the case of *Belfield* v. *Rowse*, *Co. Lit.* 33 *a ;* the tenant had pleaded that the heir to the time of his death had been always ready, and that since the death of the heir, he had always been ready to assign dower to the demandant ; then demandant could not have demurred, notwithstanding he had not had the freehold the whole time from the death of the husband. And there cannot be any difference between a descent and a conveyance, without turning the Law into ridicule.

2 *Bac. Wilson's ed.* 399. Demandant occupied five years, then the tenant entered, she brought dower ; and agreed, tenant need not say *tout temps prist* generally, but shew the case ; for the time she occupied shall not be allowed her.

2 *Bac.* 394. In dower, judgment upon *nihil dicet,* was given ; husband died seized, inquiry, damages eight pounds per annum, and afterwards demandant had execution and damages for eight years, when it appeared that she had been seized for part of the eight years, and because she had damages for eight years, having been seized for part of that time, the court reversed the judgment.

But can damages be recovered against the heir of the heir, or against the feoffee of the heir, for any more than his own time ? The heir of the heir is not a deforcer, and cannot be until a descent cast, and if he do not deforce then, but is ready to assign, how can damages be recovered of him ? And does not the feoffee stand in the same situation as the heir of the heir ? See *Aleworth* v. *Roberts,* 13 *Car.* 2 in *B. R.* reported in 1 *Levinz. R.* 38, 9, where this position seems to be taken and maintained.

*Ibd.* 38, 9. The widow upon the death of the husband, has a qualified freehold estate in the land, and the lands descend with the estate upon it; and if conveyed, the feoffee takes it subject thereto. But when the land descends from the heir to the heir of the heir, it does not descend with the damages upon it, nor does the feoffee of the heir, take it otherwise than the heir of the heir by descent. The heir it is true shall be charged with damages, if in life, but not his heir or alienee; for they are lost by the death of the heir, and are not a lien upon the land which passeth from the heir, either by feoffment or descent. And if damages should be recovered of the heir of the heir, or of the

alienee of the heir, from what time shall they be recovered ? Not from the death of the husband, because neither of them had the land at that time ; not from the death of the heir, for neither of them was the deforcer at that time.

The damages are wholly uncertain and are not a lien on the land, and do not run with the land any more than a trespass ; and the heir of the heir or the feoffee of the heir may plead *tout temps prist* from the time he became tenant, without taking any notice of the former tenant.   *Aleworth* v. *Roberts, Lev.* 38, 9.

It is said the feoffee of the heir cannot plead *tout temps prist*, because he had not had the lands all the time since the death of the ancestor ; and 2 *Bac.* 392 is cited.   But this seems to be a mere saying in Bacon, without any principle to support it, and does not accord with *Co. Lit.* 33 *a.* where it is said, the feoffee of the heir cannot at the first day, plead *tout temps prist*, because he had not the land all the time since the death of the ancestor. And in 32 *b.* it is said, if the widow bring her writ of dower against the heir, and the heir cometh into court upon the summons the first day and plead *tout temps prist*, if the widow hath not requested her dower, she shall lose the mesne value, and her damages, but if she hath requested her dower, she may plead it and issue may be taken thereon.   *Co. Lit.* 32 *b.*   By this it appears that the first day is given to the heir, and that the feoffee cannot come at that day.

1 *Co. Inst.* 124 *ch.* 12, Stat. of *Marlebridge.* In a plea of dower that is called *unde nihil habet,* from henceforth, four days shall be given in the year at the least.

Before the Stat. of Marlebridge, in a writ of dower *unde nihil habet,* there were days of common return, as in other real actions, which made long delay and was remedied by that statute.   But still the feoffee could not come at the first day ; that day being to the heir.

Suppose the widow should wait two years without any demand, and then the heir should alièn the land, and the widow should bring her writ against the alienee, could the heir come at the first day and say *semper paratus,* and the alienee at the second day, and say *tout temps prist* from that time ?   And suppose the heir paid the widow for the use of her dower, for two years without setting out the same, and then aliened in fee, could not the

alienee when sued, plead that the heir was ready while he was tenant, and that he since he became tenant, had been and still was ready ?

But the practice in the old books on this point, seems not to be applicable, for we have no days of common return, as in real actions, and the tenant when sued for dower, appears and pleads as in other cases ; and in this case, may plead *tout temps prist* for the heir and himself.

In the case now before the court, the heir while he was tenant, paid the widow annually for the use of her dower ; and the books cited shew that when the widow has occupied for part of the time, she shall not recover for that portion of the time ; and the tenant must be allowed to show that, for it will support the plea of *tout temps prist*, and under that plea, may be given in evidence.

The demandant may take issue that the tenant had not been *tout temps prist*, and give in evidence a demand or other matter to disprove the plea, 2 *Bac. Wilson's ed.* 393.

If the tenant cannot plead *tout temps prist*, because he had not the land all the time, then demandant cannot recover damages of him for all the time, for in a count for damages, the defendant may plead to and deny the whole or any part thereof.

*Co. Inst.* 1 *vol.* 80, *Statute of Merton*, *C.* 1. First, of widows which after the death of their husbands, are deforced of their dowers, and cannot have their dowers or quarantine without plea ; whosoever deforce them of their dowers or quarantine of the lands whereof their husbands died seized, and that the same widows after shall recover by plea, they that be convict of such wrongful deforcement, shall yield damages to the same widows ; that is to say, the value of the whole dower to them belonging, from the time of the death of their husbands, unto the day that the said widows by judgment of our court, have recovered seizure of their dower.

Under this statute, before damages can be recovered, there must be a demand of dower, and refusal to assign. But omission or neglect amounts to a refusal to assign. The statute of *Merton* says nothing about demand or notice ; and our statute, *Rev. Laws.* 397, *Sec.* 3, says if the widow be deforced of her dower, or cannot have it without suit, or if her dower be unfairly assigned or not assigned within forty days after the death of her

husband, then she may sue for and recover the same with damages, from the time of the husband's death, if he died seized, or from the time of demand, if the husband was, but did not die seized.

1. If the widow be deforced of her dower, or cannot have it without suit, there can be no deforcement without refusal, and there can be no refusal without demand.

2. If her dower be unfairly assigned or not assigned in forty days.

Suppose dower to be unfairly assigned or not assigned in forty days, there must be a demand before the tenant can be charged with damages for the detention.

The tenant in an action of dower, can be charged with damages in no case without a demand; and there is no difference between our statute and the statute of *Merton*, on this point. There must be a demand under both statutes, or no damages can be recovered. Under our statute when demand is made and not complied with, the demandant recovers damages from the death of the husband if he died seized, though the demand was made six years after, and from the time of demand, if he did not die seized; though the action should be brought six years after the time of demand.

Suppose the widow should bring her writ of dower against the heir, the next day after the husband died; without notice, she could not recover damages; but if she made demand the next day after his death, and brought her writ six years after, then she would recover damages for the whole time, whether the husband died seized or not.

6 *Johns. Rep.* 290. *Hitchcock and Ann his wife* v. *Harrington.* In this case, Northop the husband of demandant, died seized, and afterwards his son and heir conveyed the land to W. B. who conveyed to the tenant, the tenant being the second alienee of the heir.

There was no demand of dower in this case, and Kent, Chief Justice said, *page 296,* that that should not prejudice the claim to damages, because the tenant if he would excuse himself from damages, must plead *tout temps prist;* and unless he so pleaded, he should not take advantage of the widow, in not demanding her dower.

This case in 6 *John.* is the case of the alienee of the heir, and proves that the alienee of the heir may plead *tout temps prist,* and that when such a plea is pleaded, the widow cannot recover damages unless she prove a demand. *Rev. L.* 51.

1 *Co. Inst* 80. The second section is a copy of the statute of *Merton,* and the only part of the act that applies.

By the case last cited from 6 *Johns.* 296, it appears that their statute, and the statute of *Merton* are the same; and that the alienee of the heir can plead *tout temps prist,* which proves that the saying cited from *Bacon,* is not law; and that what is said in *Co. Lit.* 33 *a.* accords in principle with the opinion of Kent, Chief Justice, in 6 *John.* 296. See 2 *Johns. Rep.* 484, *Humphrey* v. *Phinney,* where the plea of *tout temps prist* was pleaded by the second alienee of the husband, and held a good plea.

The Demandant in reply.

Much of the defendant's argument is conceived to be irrelevant, and consequently will not be replied to.

The plea of *tout temps prist,* indirectly admits the damages have not been paid, for by it the defendant seeks, to excuse himself from their payment, by alleging that he has always been ready to assign dower, &c. and prays judgment whether the demandant ought to have any damages against him, by reason, &c.; an issue found under this plea, would not be sustained by shewing that the damages had been paid; the evidence would be irrelevant; the question to be tried is only whether dower had been demanded; to say the damages had been satisfied, is inconsistent with the plea.

It is not pretended by the demandant's counsel, if the damages have been paid, that she is entitled to recover them. In the case cited by defendant's counsel, 2 *Bac.* 399, where demandant had occupied five years, it was agreed that defendant need not plead *tout temps prist;* for the time she had occupied, should not be allowed to her, and with very good reason.

So in the case from 2 *Bacon,* 394, cited by defendant's counsel, demandant had judgment by default, and it appeard that the jury assessed damages for eight years, when defendant had been seized part of the time. The court set aside the inquisition, but from the note of that case in *Bacon,* I take it, that the time de-

mandant was seized, was in virtue of the *Hab. facias* issued in the same cause.

If the damages have been paid in part or in all, I can see no good reason why the matter may not be pleaded and a direct issue formed on the fact; it would certainly be a more common sense way of coming to it, than to prove payment under a plea which asks the court to excuse the defendant from paying damages, because he has always been ready to assign dower; and I submit whether payment of the damages could not be proven under any form of pleadings that do not admit the non payment, or even on the execution of the writ of inquiry. In assumpsit, if it appears a part of the debt is paid, the jury of inquiry can only find the balance.

The case cited from 2 *Johnson's Rep.* 484, by defendant's counsel, was when the husband did not die seized, the defendant pleaded specially the conveyance by the husband, and that great and valuable improvements were made after the conveyance, and that defendant was always ready after the death of the husband, to set off one third of the premises in value, as they were at the time of the conveyance; and held a good plea, because the demandant must take her dower according to the value at the time of the alienation.

This case does not prove that the feoffee of the heir may plead *tout temps prist*, for himself and the heir; but it does prove that the defendant may plead a special matter in discharge of himself, specially, and from analogy, that he might plead payment of the damages.

In the case cited by defendant's counsel from 6 *Johnson's Rep.* 290, the question whether the feoffee of the heir can plead *tout temps prist*, was not discussed or considered; and what Chief Justice Kent says in page 395, is only that if the tenant would excuse himself from payment of damages, he must plead *tout temps prist*; and 2 *Johnson*, 484, the case above referred to, is cited, which is not a case in which such a plea was pleaded.

The case of *Aleworth* v. *Roberts*, cited from 1 *Levinz.* 38, 9, was where the demandant in dower, had Judgment, and the writ of seizin was executed, the tenant brought error, and the judgment was affirmed. Pending the writ of error, the tenant aliened the land, and died, and then the demandant brought a

*sci. fa.* against the heir of the heir, and the alienee of the heir, and the court held that the judgment was complete at the common law, without damages; and judgment was given for the tenant. The court says the damages are lost by the death of the tenant, against whom the judgment was. The case is different from the one now under consideration, and does not appear to have been considered as authority for the position contended for by the defendant's counsel, at any time since it was made. If the case is good authority, it only decides that after judgment seizin, and death of the defendant, a *sci. fa.* for an assessment of damages, cannot be brought against his heir and alienee. All the cases hold that the action must be brought against the tenant of the freehold, and the demandant's claim for damages, cannot be defeated by alienation of the heir. The death of the tenants, appears to be the reason why damages could not be recovered. In *Aleworth* v. *Roberts*, the court likens the case to damages in trespass : See a note of this case in *Bacon*, 2 *vol.* 394, 5.

HORNBLOWER, C. J.    The defendant pleads, that from the death of the demandant's husband, to the time when the defendant became tenant of the freehold, the heirs of the said husband in whom the freehold was, were always ready : and that the de fendant from the time he became tenant of the freehold, always was, and still is ready &c.    To this plea; the demandant has put in a general. demurrer.

The demandant's counsel supposes that our statute, *Rev L.* 397, giving the widow, damages if the husband did not die seized, after demand made, not only introduces a new rule, (as it certainly does in relation to the rights of the widow) but has taken away the plea of *tout temps prist.*    In this I think he is mistaken.    It is true, that upon such a plea, the demandant must either take her dower as tendered, or reply that she demanded dower.    Her right to damages would then depend upon the issue, whether she had demanded dower or not.    If found for her, then she would be entitled to damages according to law : that is from the death of her husband, if he died seized ; and from the time of the demand made, if he did not.    In this case, the count is for dower of lands whereof the husband died seized ; and the fact that he died seized, is not controverted, but admitted by the plea.

Woodruff v. Brown.

If therefore, an issue whether dower had been demanded or not, should be found for the demandant, she would have damages from the death of her husband. I do not see upon what principle, demandant's counsel can contend that our statute has taken away the plea of *tout temps prist;* unless he supposes, that she is entitled to damages if her husband died seized, whether she ever demanded dower or not. But that certainly was not the intention, nor can it be the effect of the statute. It has not altered the law in cases where the husband dies seized. The statute of *Merton* gave the widow, damages, in such cases, from the death of the husband, and so does ours : and yet it was always holden under the former, that upon a plea of *tout temps prist,* a demand before action brought, must be proved.

It is true, in *Hitchcock & Ux* v. *Harrington,* 6 *Johns. R.* 290, it was held that the demandant was entitled to damages from the death of her husband, though she did not prove a demand. But whether demand, or not, was not put in issue in that case. The tenant pleaded that the husband was in full life. Secondly, *ne unques accouple, &c.* and Thirdly, *ne unque seisie, &c.* Now unless one or more of these pleas, were true, the demandant was not only entitled to dower, but to damages from the death of her husband. Kent, C. J. said, " it was held in *Brown and Ux* v. *Smith,* cited in *Bull. N. R.* 117, that if the heir sell to I. S. and the widow recover against him, he must pay the whole mesne profits, from the death of the husband, though he has not himself been half the time in possession. The widow is entitled to these damages under the statute, and she can recover only against the tenant," and he adds, " nor does her omission to show a demand, prejudice her claim to damages in this case ; for it was decided in the King's Bench, in *Dobson* v. *Dobson, Cases temp : Hardw.* 17, that though no demand of dower *in pais* be shown, yet the tenant, if he would excuse himself from damages, must plead *tout temps prist,* and unless he so plead, he shall not take advantage of the widow's laches in not demanding dower. The same rule has been repeatedly recognized, *Co. Litt.* 32, *b.* 33 *a ; Bull. N. P.* 117."

But Secondly, It is insisted, that the alienee of the heir, cannot plead *tout temps prist.* In answer to this, it is admitted that such a tenant cannot plead *he* has always been ready, because he

has not had the land all the time since the death of the husband; but that he may plead, as the defendant has done in this case, viz: that the heir was always ready while he was tenant, and that the defendant has always since he became the tenant, been ready and that he still is ready, &c. But the books do not furnish us with any instance or precedent of such a plea. It would be bad on general demurrer, for this plain reason. Such a plea goes only to the damages, and must always be accompanied with a tender. The demandant must then either accept the tender, or reply, a demand made. Now if she accepts, she abandons her claim for damages: if she does not accept, she must reply : but how can she reply to such a plea ? Must she reply that she has demanded dower of both ? If so, she must prove a demand of both; or she does not maintain her issue. She may then lose her damages for all the time the heir was in, although she demanded dower from him, because she has not also demanded dower of the alienee. And if to such a plea, the demandant should reply, that she had demanded dower of one of them, the replication would be no answer to the plea.

But another and conclusive reason why the plea is bad, is that the plea of *tout temps prist*, is personal and peculiar to the heir. He may protect himself from the payment of damages, by such a plea and tender, if no dower has been demanded of him; but he cannot transfer that privilege, to his alienee. The alienee takes subject to the widow's dower, with damages from the death of her husband, and she can only recover those damages against the actual tenant. She cannot now recover them against the heir, even if she had demanded dower of him; and his alienee cannot deny her right to damages on the ground that she had not demanded dower of the heir. The heir by making the alienation, rendered it impossible for him to assign her dower, and his alienation was in fact equivalent to refusing her dower. She could not after that, demand dower of him; and now when she makes a legal demand by suit against the alienee, he shall not deprive her of damages for the time the heir had the land, because she did not demand dower of him before he aliened. The law leaves the alienee to seek his remedy upon his covenants against his grantor; and it was his folly if he did not require indemnity.

It is argued however by the defendant's counsel, that if the widow has received satisfaction for the yearly value, from the heir, while he was tenant, she ought not to be permitted to recover damages for the whole time, from the alienee, and this is certainly true. But a plea of *tout temps prist* would not save him from such damages. He could not under that plea, give in evidence that the plaintiff had received compensation from the heir. Such evidence would be irrelevant to the issue; and it would be inconsistent with the plea that the heir had always been ready to assign her dower: for the very fact that she had required and that he had paid her a compensation, admits her claim to dower.

Nor would a plea that the demandant had received satisfaction for the yearly value, from the heir, be a good plea to an action of dower. It certainly would constitute no bar to the action. She would notwithstanding such plea, have judgment, that she recover her dower and the yearly value, with damages for the detention. It follows then, that if the widow has enjoyed the premises with the heir, while he was tenant, or commuted with him for the yearly value, those facts must be given in evidence on the writ of inquiry. The right way in such case, is for the defendant if he has no defence to the action, to suffer a default, and then to prove on the inquest, that the demandant has received satisfaction from the heir. I am therefore of opinion, that the plea must be overruled with costs.

WHITE, J., concurred.

FORD, J. Mary Woodruff counted, in this case, for dower in lands whereof her husband died seized; to which count, Benjamin Brown, the defendant pleaded in substance, that the heirs of her husband were always ready to assign dower to her in the said lands, until they conveyed their estate therein to the defendant; and that the defendant had always been ready, since he took the said lands, and still is ready, to assign it to her; wherefore he prays judgment whether any damages ought to be adjudged against him, for detaining her dower. The demandant has demurred to this plea, supposing every thing in it to be true, as insufficient in law to bar her of damages; and in my opinion this plea, that he was always ready (called *tout temps prist*) is of no avail since the passing of our statute relative to dower, though

it was a good plea before our act, under the old, abolished British statute of *Merton*, 20 *Hen.* 3.

It is well established by the common law, that dower "for the sustenance of the wife, and nurture and education of the younger children, *shall* be assigned within forty days after the death of the husband, by the heir of the husband or his guardian;" and although this important *duty* was afterward enjoined and confirmed by *magna charta*, an omission of it could not be compensated by awarding damages against the tenant, because, dower being a real action, no damages could be awarded in it, by the common law. Therefore the statute of *Merton* was passed, enabling a widow to recover damages, in this action, *if she was deforced of her dower*. It provided, that if widows be deforced of their dower ; or *cannot* have it without suit, in lands whereof their husbands died seized, that the tenants, *on conviction of such deforcement*, shall render to them the full value of their dower, from the death of their husbands. *Bac. Ab. Dower I.* But it gave such damages, against the tenant, only on his being convicted of *deforcement;* and as he, who was always ready to assign dower, could not be convicted of deforcement, he was allowed to plead *tout temps prist;* and the widow, in order to convict him of deforcement, was obliged to reply, that she had *made a demand of dower*, and it had not been assigned to her. Thus she, under this statute, was obliged to perform the *first act;* and until she had done it, the heir or his alienee could keep the profits of her estate with impunity. The duty of making a legal demand of dower, which was imposed upon the widow by this statute, though easily to be performed, apparently, might become exceedingly onerous and oppressive to her. To be a legal demand, it must be made on the tenant who had the title to the freehold ; it would be void if made on any other person. This person might be some unknown son, or grandson of her late husband's deceased brother, or sister, whom she never knew, or the heir of the estate may be travelling about in Europe, Mexico or Canada. While she was finding out who the person was, by name, and before she could get a demand made upon him, so as to be capable of legal proof, there might elapse an interval of many years, and her sustenance during that dreary time, be entirely lost to her ; while the heir, if eventually he made the as-

signment on demand, would have swallowed up all the profits of her estate, with impunity.

But upon revising the British statutes, our legislature, in order to remove the evils resulting from this statute, inserted *two* additional clauses in the body of our law, for reviving the old common law, making it the *duty* of the *heir* to assign dower; not upon demand, but within a certain limited time after the death of the husband, or else that he should pay the widow the fair annual value of her dower, for the time he had the use of it. The words of the statute are these: " If the widow be deforced of her dower, or cannot have it without suit, or if her dower be unfairly assigned, or not assigned within forty days after the death of her husband, *then* she may sue for and recover the same, *with damages;* that is to say, the value of the whole dower to her belonging, from the time of her husband's death, if he died or shall die seized, unto the day that she shall recover seizin of her dower, by judgment of the court." *Rev. Laws,* 397, *sec.* 3.

The British statute gave damages in *two* cases, ours gives them in *four.* The *first* case is, "if the widow be deforced of her dower," *secondly,* " if she cannot have it without suit," and so far they are both alike. Our statute then adds a *third* case, " if her dower be unfairly assigned;" and then a *fourth,* "if her dower be not assigned within forty days after the death of her husband." From the time of passing this act, *tout temps prist* has ceased to be any defence in dower. It is not enough that the heir has been *always ready;* he must have actually *made* the assignment, and that within forty days after the husband's death, or else account for the use he has had of the widow's estate. This does not depend on a construction of any obscure or equivocal terms, for the words of the statute are plain and express; and whenever they are so, it is always unlawful to vary from them, by construction.

Some cases and judicial decisions are cited from the state of New York, wherein *tout temps prist* has been recognized as a lawful defence; and it must be so, in that state; for they have adopted the British statute of Merton, and have no other rule to go by; they have no such statute as ours for their guidance.

Some instances of this plea, are to be found, it is said, on the files of our own courts, since the passing of our statute, in 1799; put

in, too, by respectable members of the bar.   This is very easily accounted for.   Acute men pleading a number of pleas, often introduce one that they know to be illegal, sometimes to perplex the adverse pleader, but oftener to embarrass and delay the suit, for the advantage of their clients.   But is it supposed that a few illegal pleas, never so much as brought before the court for consideration, are gravely to form a law for the state, whereby a few pleaders could make, or repeal, public laws, without deference to either the court or the legislature?   I am very sure that this was not meant; and it excites a great wonder, to what end such pleas were cited.

It is asked whether the widow shall recover damages for all the time since her husband's death, if the heir has paid her the annual value of her dower for five or six years or more of the time; or how is he to obtain an allowance for it.   The court is not to advise how a party shall proceed; yet on a judgment by default or on demurrer, there must be a writ to enquire of the damages, and on the execution of that writ, it would seem, from what is said in *Bac. Ab. dower, I.* that payments received by her on this account, may be kept back or recouped in the damages; or possibly may be deducted as reprises paid on the land; but this matter is not involved in the present demurrer, and requires no opinion.   I consider the plea demurred to, as wholly untenable under our statute, and that judgment for this reason, ought to be given on it, for the demandant.

DAYTON, J.   The husband died seized, and the heirs after being possessed for some years, conveyed to the defendant, who is now the tenant of the freehold, and against whom the demandant has brought her action of dower, and declared in the usual form.   The defendant has pleaded two pleas.

1, That her dower was set off to her, by the heirs at law, and of which she took possession, &c.

2, That the heirs of her husband, from the time of his death, and up to the time when the defendant became tenant of the freehold, and the said tenant since that time, always were and the said tenant still is ready, &c. to render to the said Mary, her dower, &c.

To this second plea the demandant has demurred generally,

thereby admitting the fact (if the plea be well pleaded) that the heir always was, and the tenant always has been and still is ready to assign her, her dower. Two questions arise on this plea and demurrer.

1, Whether this is a good plea under our statute? and if it be so,

2, Whether it is well pleaded in this case by the feoffee of the heir?

That the plea, *tout temps prist*, is good under the British statute, is not denied ; but it is contended by counsel that the statute of this state, requires a construction and practice differing in this respect from the English act.

It is well here to understand distinctly how the law of dower stood independent of statutory provisions. To relieve the widow from feudal exactions, it was provided by *Magna Charta*, that she should give nothing for her dower, and tarry in the chief house of her husband, for forty days (called the widow's quarantine) after his death, *within which time, it was the duty of the heir to assign her dower*, *Co. Litt.* 124, *b. Ch.* 7 ; but no penalty was provided by Magna Charta, if it were not done. This was in a degree remedied by the statute of *Merton*, 20 *Henry* 3, *Ch.* 1 ; in which was contained the following provision : " Of widows which after the death of their husbands, are deforced of their dowers, and cannot have their dower or quarantine without plea : whosoever deforce them of their dowers, or quarantine of the lands whereof their husbands died seized, and that the same widows after shall recover by plea, they that be convicted of such wrongful deforcement, shall yield damages to the same widows ; that is to say, the value of the whole dower to them belonging, from the time of the death of their husbands, unto the day that the said widows by the judgment of our court, have recovered seizin of their dower, &c."

The substance of this statute is that if widows be deforced of their dower, and cannot have their dower or quarantine without suit, they shall recover damages as therein provided : connect with this statute, the common law rule, *i. e.* if the heir or his guardian did not assign her dower *within the term of her quarantine*, or if it were *unfairly assigned*, she had her remedy by suit, (*Co. Litt.* 34, 35 ; *Ch.* 5, *Sec.* 39 ; 2 *Blac. C.* 135 ; 6,) and you

have the whole of the third *sec.* of our act, except that which gives damages where the husband does not die seized. The statute of *Merton* indeed embraces the common law cases above named, for if the heir refused to assign dower within the forty days, or if when demanded, he assigned it unfairly, it was in law a deforcement of her rightful dower, and she was driven to her suit, and must have recovered her damages under that statute as she would now under our act. By which, *Rev. L.* 397, *sec.* 3, it is enacted " if the widow be deforced of her dower, or cannot have it without suit, or if her dower be unfairly assigned, or not assigned within forty days after the death of her husband, then she may sue for and recover the same with damages, &c."

This gives us the statute of *Merton* and the common law rule condensed in clear language; nothing more. The only alteration of the law intended to be effected by this *sec.* of our act, is found in the latter clause, which gives the widow " the value of the whole dower to her belonging, from the time of her husband's death, if he died or shall die seized, or *from the time of demanding dower, if the husband was or shall be seized, but did not or shall not die so seized,* until the day she shall recover seizin of her dower, by judgment of the court, *Martin* v. *Martin,* 2 *Green,* 128. The widow's right to dower in those lands which had been aliened by her husband in his life time, was as equitable and just as, in the other case ; and the clause *italicised* above, was intended merely to remedy that omission in the English statute, not to alter in any respect, the construction or practice under that part of the section which is common to both.

The English cases therefore, may properly be referred to for the true construction, or rather for the proper practice under our act. The law of those cases, is well settled. Where the action is against the heir (the husband having died seized, as in this case) by the English practice he could come in on the first day of the return of the summons, acknowledge the action, and plead, as in this case, *tout temps prist ; Co. Lit.* 32, 33 ; 1 *Brooke's Ent.* 205 ; 2 *Bac. ab.* 149 ; 2 *Mod.* 25 ; *Park on Dower,* 297 ; and upon which, issue might be taken, and the question of damages would depend on the event of that issue. We have no *common return days,* and our forms of pleading do not require that such plea be put in on the first day of the return of the summons, but if it be

in itself good, may be pleaded as any other plea, *Humphrey* v. *Phinney*, 2 *J. R.* 484.   The replication to this plea, was that she had demanded her dower, and the tenant had refused to assign it; for it was held, (notwithstanding the statute of Merton requires no demand) that the heir is not liable to dower until a demand be made, because as is said "the heir holdeth by title and doth no wrong until a demand be made," *Co. Litt.* 33, and the authorities above cited.   So in 2 *Sellon's Pr.* 304, it is said, "damages must be after demand of dower, for the heir is not bound to assign till demanded.   But unless the heir plead *tout temps prist*, he shall not take advantage of the widow's *laches* in not demanding."   See also *Dobson* v. *Dobson, Cas. temp, Hardw.* 17 ; and yet it will be remembered, that it was then the duty of the heir, by common law, to assign dower within forty days, as it is now by statute.   If the issue on *tout temps prist* were found against the defendant, the demandant recovered her damages from her husband's death.   And so under our statute, if the husband died seized, and on a like issue, a demand were proved, the recovery would be from his death ; but if he did not die seized, and a demand were proved, damages would be from the time of demand only.   The two statutes in reference to damages where the husband died seized, being substantially alike, and the English decisions having been uniform and consistent throughout, they are our safest guide.   I cannot persuade myself of the propriety of establishing at this late day, a new doctrine.   The general practice of the bar, from the passage of our act in 1799, has been pursuant to the English cases.   If it were intended to effect any important change in the practice in dower, the cotemporaries of Judge Paterson, by whom our act was drawn, must have known it.   It is an impeachment of their professional characters, to suppose otherwise.   They were as a body of lawyers, of almost unequalled intelligence and ability.   They lived in habits of professional intercourse with the draftsman of the law. A remnant of that noble brotherhood yet remains in daily practice in our courts, "a light to our feet, and a lamp to our paths." Yet none have ever heard, so far as we know, that any such change as is now contended for, was intended by the act of 1799. The books of judgments in the clerk's office subsequent to 1799, show the plea, *tout temps prist*, as often as any other.   I have

examined a few of them.   In September term, 1803, being only four years after our act was passed, in the case of *Titus' widow,* v. *Stout,* this plea alone was filed by L. H. Stockton, Esq. and without exception.   Passing the intermediate records, I find in *Book* V. *of Judgments* from *Nov. T.* 1827 to *Sept. T.* 1833, thirteen cases of dower wherein pleas have been pleaded.   In eight cases out of the thirteen, *tout temps prist,* has been pleaded ; and in at least three of the remaining five cases, it is evident from the pleas filed, that defences were relied upon, inconsistent with the use of that plea.   In a majority of these cases, however, (though not in all) the subsequent proceedings show that the husband did not die seized.   But I believe the plea has been used without reference to that fact.   I am content to take the law as I find it.   Indeed were we about to settle a rule of practice under our act, now, for the first time, I do not know that it would be desirable to adopt any other.   The heir is *in* of right.   He may assign dower, it is true, without demand, but if the widow neglect to demand it, he cannot properly be held guilty of a tortious act.   I hold therefore, that *tout temps prist,* if well pleaded is good under our statute.

II.  But can the feoffee of the heir put in this plea?  that is the remaining question in this case, and it is held in all the English books, that he cannot, " because he had not the land all the time since the death of the ancestor," *Co. Lit.* 33, *sec.* 36 ; *Park on dower,* 303 ; *Gilbert on D.* 375, 6 ; 2 *Sellon's Pr.* 304 ; I have seen no authority, either English or American which sustains this plea in behalf of the feoffee of the heir : nor do I believe that any such precedent can be found in the books.   The reasons are obvious ; the plea is not only personal in its character, but the fact that the heir has alienated the lands, repudiates the plea. The act of alienation is tantamount to a refusal to assign dower : it is a deforcement in effect.   The cases of *Humphrey* v. *Phinney,* 2 *J. R.* 484 ; and *Hitchcock* v. *Farrington,* 6 *J. R.* 290 ; are cited on this point, but neither meet the case.   In the first named, the husband did not die seized ; and the feoffee had been seized all the time since the husband's death.   In the case last named, the point before us, was not raised either on the pleadings, or in any other way.   There is nothing in it which has any legitimate bearing on the present case.

We are asked whether it shall be permitted for the widow to recover damages against the alience, for any longer time than he has been seized? Undoubtedly; her only remedy is against the tenant of the freehold, and though he has been seized for but one day, he must answer in damages for all the time from the husband's death. His remedy is over against the heir; and if he has not indemnified himself, it is his own folly. Such is the language of all the cases.

If there has been an agreement, or commutation between the widow and the heir, as is alleged in this case, the fact can be shown. There can be no pretence on her part of a right to recover that for which she has already been satisfied. These questions however, are wholly aside from the case. The mode of proceeding will be found in the books, and it is not the duty of this court to act on this question, as the advisers of counsel. Judgment in this case must be entered for demurrant, with costs.

NEVIUS, J. The declaration in this case, contains a common count in dower, to which the defendant has pleaded,

*First*, That after the husband's death, and while the freehold was in his heirs at law, persons were appointed by them and the demandant, to set off her dower, that they did so, and that she took possession of the same—and

*Second*, That from the death of the husband, to the time when he the defendant became tenant of the freehold, the heirs in whom the freehold then was, were always ready to render to the plaintiff, her dower in said freehold, and that he the defendant from the time he became tenant, was and still is ready to render her dower.

Upon the first of these pleas, the plaintiff has taken issue and to the second, filed a general demurrer.

The first question raised by this demurrer, is whether the plea of " *tout temps prist*," is a good plea in this state, in a case where the husband died seized of the lands in question. Or whether either the heir or feoffee in such case, can excuse himself from the payment of damages, under the statute of New Jersey, by pleading that he was always ready to assign dower. If the want of a demand, is no bar to the widow's right to damages when the

husband died seized, as in the present case, this plea cannot be sustained.

By the constitution of this state, adopted in 1776, the common law of England, as well as so much of the statute law as had before been practiced in this state, were declared to remain in force until altered by a future law of the Legislature. At that period, the statute of Merton was in force here and continued so, till the passage of our own act in 1799.

That statute provided, "That if widows were deforced of their dower, and could not have them without plea, whosoever should deforce them of lands of which their husbands died seized and should be convicted of such wrongful deforcement, should yield damages to the same widows ; that is to say, the value of the whole dower to them belonging, from the time of the death of their husbands, to the day that the said widows by judgment of court, have recovered seizin of their dower."

Having adopted this statute, it would follow almost as a necessary consequence, that our court would adopt the same construction which the courts in England had given to it. By that construction, a widow could not recover damages till after demand made of the heir, for it was repeatedly adjudged that the heir was not bound to assign dower, till demanded, for the reason given, that the law cast the freehold of the whole upon him, and that he was in by right. This construction gave rise to the plea of "*tout temps prist*," to which no other replication could be made, than that the plaintiff had demanded her dower, and it was not assigned. Upon this issue, she was driven to prove a demand. This construction however appeared at first inconsistent with the positive and express enactment of the statute, and was not adopted without considerable opposition, but by repeated decisions it finally became the settled law in Great Britain, and was so received and maintained here, till the passage of our own act.

Our statute provides " That if the widow be deforced of her dower, or cannot have it without suit, or if it be unfairly assigned, or not assigned within forty days after the death of her husband, then she may sue for and recover the same with damages ; that is to say, the value of the whole dower to her belonging from the time of her husband's death, if he died or shall die seized,

or from the time of demanding dower, if he did not or shall not so die seized, until the day she shall recover seizin of her dower, by judgment of court.

By comparing these statutes, it will be perceived that there is a manifest difference not only in their phraseology, but in their respective provisions for the widow. And it can scarcely be doubted, but that our Legislature, by changing the terms, intended to avoid the construction which had been given to the statute of Merton. Under that statute, a deforcement, according to the precise and technical meaning of that term, was necessary to entitle the widow to damages, from her husband's death, if he died seized. By a deforcement is understood, a wrongful withholding of lands from the right owner, or in case of dower, a denial of the widow's right. Such deforcement therefore could not be established against the heir, who pleaded " *tout temps prist*," without proof that a demand had been made upon him, and his refusal to comply with it. This evidence was necessary to convict him of a deforcement or withholding or denying the widow's right. But even under that statute, it was held, "that although a demand was necessary, yet if it was made of an infant heir under fourteen years of age, who did not refuse, but was prevented by his guardian from assigning dower, was a refusal in law, sufficient to entitle the demandant to damages."

Our statute in order to secure to the widow at all events, her dower, and damages from her husband's death, if he died seized, in addition to the deforcement contemplated by the English statute, has provided that she shall have her damages, if the heir should unfairly assign her dower, or not assign it at all in forty days, thereby making such unfair assignment or omission to assign, equivalent to a deforcement, and dispensing with the necessity of proving a wrongful *withholding* or a denial of her right, by evidence of a demand and refusal. And it has also drawn a distinction between the widow's claim for damages when the husband died seized and when he did not, requiring a demand in the latter case, by express terms, and not in the former. Unless this construction be given to our statute, that clause of it which relates to an unfair assignment or no assignment, within the forty days, is entirely nugatory and without meaning. In

construing a statute, it should be so done as to give every part of it, effect.

It is no answer to say that this period of forty days mentioned in the act, is a mere recognition of the widow's common law right of quarantine, for that right is wholly superceded by the provision contained in the second section, which secures to the widow, the right to remain in and hold and enjoy the mansion house of her husband, and the messuage and plantation thereto belonging, without rent, till dower be assigned. At common law, the heir might put her out of possession after the expiration of her quarantine, without assigning her dower, but under our statute, it has been held that she cannot be ousted by the heir, unless her dower was first assigned, and that she has a freehold for life, unless defeated by the act of the heir. *Denn* v *Dodd*, 1 *Hal.* 367; *Ackerman* v. *Shelp*, 3 *Hal.* 129.

I cannot perceive the propriety or necessity of giving to the statute of New Jersey, the same construction which has been given to the English statute, when I find them so obviously variant in their terms and provisions. I am of opinion therefore, that no demand is necessary in this state, to entitle a widow to damages from her husband's death if he died seized, and that the plea of the heir, that he was always ready to assign dower, is no answer to the demand. If the heir therefore cannot avail himself of this plea, much less can his foeffee do so.

I think the demurrer is well taken in this case, and should be sustained.

*The plea demurred to, overruled with costs.*